IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02575-RM-NRN

PHILLIP ROMERO,

Plaintiff,

v.

SHERIFF STEVE REAMS,
DR OR NP TRAVIS,
DR OR NP KLAUS, and
SGT. TODD,

Defendants.

**ORDER ON
PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CASE CAPTION (DKT. 116)**

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before the Court on Plaintiff's Motion to File a Third Amended Complaint, filed July 7, 2020. *See* Dkt. #116. Plaintiff originally attached a proposed Third Amended Complaint to the Motion. *See* Dkt. #116-1. Later, on August 11, 2020, Plaintiff submitted an "updated" proposed Third Amended Complaint. *See* Dkt. #131-1. Defendant Sgt. Todd opposed the motion to amend. *See* Dkt. #123. Defendant N.P. Travis Polk also opposed Plaintiff's Motion. *See* Dkt. #127. Plaintiff filed a Reply in Support, which included an "updated" proposed Third Amended Complaint. *See* Dkt. #131. On August 21, 2020, Defendant Todd filed a Surreply opposing amendment. *See* Dkt. #135. I heard argument on the Motion on August 28, 2020 and took the matter under advisement. *See* Dkt. #136. Having read the Parties' submissions, considered the

arguments asserted at oral argument, and having taken into account relevant law, it is **ORDERED** that Plaintiff's Motion is **GRANTED**.

**Procedural Background**

This case was filed by the Plaintiff Phillip Romero on October 9, 2018. We are thus passing the two-year mark on this litigation. Mr. Romero generally alleges that, while detained in the Weld County Jail, he had his cane confiscated. At one point, he had a walker, which was also taken away. Mr. Romero says that a mobility assistance device, such as a cane or a walker, is medically necessary because he suffers from various conditions, including a serious leg injury from a gunshot wound. While he sometimes can walk without the cane, he occasionally becomes dizzy and the cane allows him to avoid the risk of falling. Mr. Romero says a cane, walker, or other mobility device is medically necessary, but it was taken away by prison officials without following the recommendations of medical personnel, and medical personnel reflexively followed the orders of jail staff. Prior to his cane being confiscated, Mr. Romero says he has been issued a cane (or some other mobility device) for medical reasons both at the Colorado Department of Corrections ("CDOC") or the Weld County Jail since at least 2016. Mr. Romero tried to get a cane or other assistive device prescribed by his medical providers, but those directives were overridden by non-medical jail personnel. Medical providers claimed to Mr. Romero that their hands were tied by the directives from jail personnel. Denial of an assistive device allegedly exacerbated Mr. Romero's symptoms and caused him additional pain. Mr. Romero exhausted his administrative remedies in asking that his cane or walker be returned.

Mr. Romero, proceeding pro se, filed his original complaint on October 9, 2018. After being ordered to cure specific deficiencies, Mr. Romero, still pro se, filed an Amended Complaint. *See* Dkt. #4. On December 3, 2018, he was directed to file an additional amended complaint, an order that was reaffirmed on February 15, 2019. *See* Dkt. #12 & #20. Mr. Romero filed his Second Amended Complaint on March 4, 2019. *See* Dkt. #22. Mr. Romero's March 4, 2019 Second Amended Complaint leveled claims against Sheriff Steve Reams, Doctor or Nurse Practitioners Travis and Klaus, and Sgt. Todd. Defendants moved to dismiss in whole or in part Mr. Romero's Amended Complaint.

I issued a recommendation on September 16, 2019 that Dr. Klaus's and Mr. Polk's motions to dismiss (Dkt. #51 & #55) be denied; that Sgt. Todd's motion to dismiss (Dkt. #54) be granted; that Mr. Romero's intentional infliction of emotional distress claim be dismissed only as to Sgt. Todd and not Dr. Klaus and Mr. Polk; and his claim for deliberate indifference to serious medical needs proceed against all Defendants. *See* Dkt. #75. Defendants Klaus and Travis filed objections to the recommendation. *See* Dkts. #76 and #77. On March 9, 2020, Judge Moore overruled the objections and adopted and accepted the recommendation. Dkt. #106.

I had previously granted Mr. Romero's request for appointment of pro bono counsel. I had ordered that pursuant to D.C.COLO.LAttyR 15(f)(2), the Clerk should select, notify, and appoint counsel from the Pro Bono Panel to represent the unrepresented party in this civil matter. *See* Dkt. #84. On January 2, 2020, counsel from the firm of Dormer Harpring, LLC entered a formal appearance on behalf of Mr. Romero. *See* Dkt. #91. I held a Status Conference on January 14, 2020 amending the

3

Scheduling Order and setting deadlines for discovery and dispositive motions. *See* Dkt. #96.

As noted, Judge Moore overruled the objections and denied in part the motions to dismiss on March 9, 2020, and the Parties attempted to conduct discovery relating to extant claims in the case.

On April 10, 2020, I granted the first of Plaintiff's several unopposed motions extending the deadlines for discovery, expert reports, and dispositive motions. Reasons cited for the extension included complications raised by the COVID-19 pandemic, difficulty scheduling depositions, and difficulty obtaining Mr. Romero's medical records. *See* Dkt. #112.

On July 7, 2020, after conducting some discovery during a pandemic-afflicted spring and early summer, Plaintiff, now assisted by appointed counsel, filed his motion to amend. Dkt. #116.

On August 6, 2020, I granted Plaintiff's Third Unopposed Motion to Extend Discovery and Dispositive Motion Deadlines (Dkt. #128), extending the date for dispositive motions to December 10, 2020. *See* Dkt. #130. The pandemic was again a principal reason for the extension, with medical professionals being particularly hard hit with work from the pandemic and the pandemic causing delays in scheduling Mr. Romero's deposition through the CDOC. On September 28, 2020, I granted another extension of discovery and dispositive motion deadlines. *See* Dkt. #139.

**Plaintiff's "Updated" Amended Complaint**

Plaintiff's proposed "Updated" Third Amended Complaint includes new claims and new defendants. The proposed Third Amended Complaint names as new

4

defendants the Weld County Sheriff's Office ("WCSO"); the Weld County Jail medical provider; Armor Correctional Health Services, Inc. ("Armor"); Dustin Owens, RN; Katie Giroux, RN; and Deputy Z. Poulsen. New claims are added against existing Defendant Sgt. Todd, Dr. Klaus, and Travis Polk, NP. The WCSO and Defendants Todd and Poulsen will be referred to collectively as the "WCSO Defendants," while Armor and its medical provider employees will be referred to collectively as the "Armor Defendants."

The proposed Third Amended Complaint include the following claims:

1. An Americans with Disabilities Act ("ADA") claim under 42 U.S.C. § 12101 against the WCSO Defendants and Armor.

2. A Rehabilitation Act claim for disability discrimination under 29 U.S.C. § 794(a) against the WCSO Defendants and Armor.

3. A claim under the Fourteen Amendment for deliberate indifference to serious medical needs under 42 U.S.C. § 1983 against all Defendants.

4. A claim under Colo. Rev. Stat. § 13-21-131 under Art. II, Sections 20 and 25 of the Colorado Constitution for deliberate indifference to serious medical needs against Defendants Todd and Poulsen.

The Second Amended Complaint had alleged only a § 1983 claim of deliberate indifference to medical needs and intentional infliction of emotional distress. Neither the Second Amended Complaint nor either prior complaints alleged any violation of the ADA or the Rehabilitation Act, any theory of liability against the WCSO or Armor, nor any claim under Colo. Rev. Stat. § 13-21-131 (civil action for deprivation of rights).

**Standard for Allowing Amendment under Rule 15(a)(2)**

Where a plaintiff seeks to amend after the deadline for amending the pleadings under the Scheduling Order has passed, the Court employs a two-step analysis to determine whether leave to amend is warranted. *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1236 (D. Colo. 2014). First, the Court examines whether "good cause" has been shown for modifying the Scheduling Order under Rule 16(b), then the Court must evaluate whether the plaintiff has satisfied the standard for amendment of pleadings under Rule 15(a).

To demonstrate "good cause" for modifying a Scheduling Order under Rule 16(b), the movant must show that the scheduling deadlines could not be met despite a party's diligent efforts. This requires examination of whether the movant could have amended its pleadings prior to the deadline. The movant must provide an adequate explanation for any delay in meeting the deadline. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n. 4 (10th Cir.2006). If the Court determines that the showing under Rule 16(b) has been made, then the Court proceeds to examine whether leave should be granted under Rule 15(a).

Under Rule 15(a), the Court should grant leave to amend "freely . . . when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the Court, but "[r]efusing to leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). A critical factor is determining whether to grant a motion to amend is the extent to which the amendment will unfairly

prejudice the nonmoving party. Unfair prejudice may occur "where the amended claims raise significant new factual issues." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006). But the raising of new factual issues must adversely affect the defendant in terms of preparing a defense to the amendment. *Id.* It is when the defendant is prejudiced from maintaining his defense on the merits that the prejudice is considered undue. *Id. See also*, *id.* at 1209 (explaining that "an amendment may be prejudicial if its timing prevents the defendant from pursuing a potentially promising line of defense"); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) ("As a general rule, a plaintiff should not be prevented from pursuing a valid claim . . ., provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.").

**Analysis**

    **Undue Delay**

The Court cannot turn a blind eye to two realities about this case. First, although the case was filed nearly two years ago, Plaintiff was without the assistance of counsel until January 2020, when counsel was appointed under the Court's pro bono representation program. Second, through the spring and summer of 2020, the COVID-19 pandemic has affected nearly all aspects of American life and work, including the practice of law. My willingness to grant repeated (unopposed) extensions of various deadlines in the Scheduling Order reflect in part the practical litigation difficulties posed by the pandemic.

The appointment of pro bono counsel is significant because, while the Plaintiff was able to survive motions to dismiss without the assistance of counsel, once pro bono

7

counsel is appointed from the Court's pro bono panel, it is generally expected that the involvement of a person trained in the law on behalf of a previously unrepresented party will result in additional investigation into the underlying facts of the case and potential additional causes of action. It is almost expected that an amended complaint will be filed that provides more factual detail and legal clarity than a pro se plaintiff could be expected to provide. Once a case gets past the motion to dismiss stage, having qualified counsel involved in a case first started by a pro se litigant is of benefit not just to the pro se litigant, but also the Court and opposing counsel. Here, counsel accepted the appointment in early January 2020 and was involved in discovery and procurement of medical records during a spring and summer affected by the pandemic.

Defendants argue in part that Plaintiff should have been aware of some these claims and new defendants earlier. But counsel for Sgt. Todd concedes that he had not produced documents in connection with initial Rule 26(a) disclosures because the Rule 26(a)(1)(B)(iv) did not require it (given that Plaintiff was a person in custody), but also because "Plaintiff likely could not have received the nearly two-thousand pages of disclosed materials while incarcerated." Dkt. #135 at 3. It is difficult to say that a pro se plaintiff unduly delayed in identifying certain claims or potential defendants earlier in the litigation where the normal process of exchanging information was delayed because of his pro se status and the impact of the pandemic. The delay here is explainable and, under these circumstances, I do not find that Plaintiff (or his counsel) unduly delayed in seeking leave to amend until July 2020.

**Undue Prejudice**

8

The second question is whether Defendants will be unduly prejudiced by the proposed amendments here. Obviously, allowing more or different claims in a case prejudices Defendants to some degree. They will have to address the new claims and the statutes relevant to those claims. The question is whether it is *undue* or *unfair* prejudice. The cases teach that for prejudice to be undue, the defendants must be hindered or handicapped in defending the case on the merits. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment'." *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). In *Minter*, the trial court had refused to allow the plaintiff to amend the pretrial order three weeks before trial to add a product liability claim for negligent alteration of a product. The *Minter* dispute had been pending for years. Nevertheless, the Tenth Circuit found that there was a rational explanation for the plaintiff's delay in seeking to amend, and further found that allowing amendment would not have unduly prejudiced the defendant in pursuing a promising line of defense. The refusal to allow amendment based on alleged undue prejudice to the defendant was found to be clear error. *Id.* at 1211 (noting that the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits") (citation omitted). As *Minter* makes clear, there is little undue prejudice where the amended claims arise out of the same subject matter as the prior complaint. *See id.* at 1208 (undue prejudice most often occurs "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues").

9

Here, the proposed new claims arise out of the same subject matter as the original complaint. Mr. Romero had his cane and walker taken away, allegedly contrary to his diagnosed medical needs. Whether this constitutes a constitutional violation because of alleged deliberate indifference to his medical needs, or whether it also constitutes violations of statutes intended to end discrimination against persons with disabilities, the underlying facts of what happened, and why (whether these were individual decisions or part of an overarching policy) are essentially unchanged. In addition, we are far from trial in this case, and Defendants will not be meaningfully prejudiced in their ability to defend against these new claims based on an approaching trial date. No trial date has yet been set.

The Armor Defendants protest that by adding ADA and Rehabilitation Act claims and *Monell* claims against Armor, they will be unfairly prejudiced in part because the new claims raise "a host of significant and separate issues." Dkt. #127 at 4. The Armor Defendants emphasize that to prevail on an ADA or Rehabilitation Act claim, a plaintiff must allege that he is (1) a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. The Armor Defendants insist that "[n]one of these elements overlap with an element of Plaintiff's existing §1983 [claim] against Mr. Polk [and] allowing Plaintiff to add ADA and Rehabilition Act claims at this advanced stage of litigation would fundamentally alter the nature of the litigation. . .." *Id.* The Weld County Defendants make the same arguments. *See* Dkt. #123 at 5. *See also* Dkt. #123 at 6–7 (protesting that allowing *Monell* claims against the Weld County Sheriff's Office would raise

10

significant and discovery-intensive factual issues that up to now have not existed in the case, including the nature of WCSO's policies and training and how those were created by decisionmakers, and whether Plaintiff was denied access to programs and services WCSO offers disabled inmates).

I disagree. First, as noted, the underlying facts and issues—the removal of the cane, whether its removal was justified, the refusal to return the cane or some other assistive device, and its impact on Mr. Romero—do not change with the addition of claims under the ADA, the Rehabilitation Act, or even under *Monell*. There may be a need for some additional discovery on the elements listed above. To the extent additional discovery is needed (especially for the Defendants as they seek to bolster their defenses to the new claims), it can be addressed via modifications to the Scheduling Order. The reality is that, fundamentally, the underlying transaction or occurrence that spawned the litigation—the alleged confiscation of the cane against medical advice—remains the same. Therefore, with appropriate modifications to the Scheduling Order, I find that Defendants will not be unduly prejudiced by the allowance of the proposed amendments.

### Futility

Both sets of Defendants argue against allowing amendment on the basis of futility. And it is certainly true that a court "is not required to grant leave to amend . . . if amendment would be futile." *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1178, 1188 (10th Cir. 2008). If the amended complaint would be subject to dismissal for failure to state a claim, it is futile. *Id.*

But the briefing on the issue of futility with respect to the amended claims purports to address multiple complex issues, including (1) necessary non-conclusory elements of claims under the ADA, the Rehabilitation Act, and municipal liability under § 1983; (2) the exercise of supplemental jurisdiction over a novel state law claim, including its retroactive effect; and (3) the application of the statute of limitations and whether the denial of an assistive device constitutes an ongoing tort so as to toll the statute of limitations. This briefing has necessarily been abbreviated because so much of the argument has been devoted to questions of undue delay and prejudice.

Where the proposed amendment is not patently futile on its face, I am inclined to follow the principle articulated by Judge Ebel, who noted of a defendant's extensive futility argument raised in opposing amendment: the "futility argument seems to place the cart before the horse. Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, Civ. No. 07-cv-01145, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008). *See also Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d. 726 (D. Del. 2002) ("[T]his court hesitates to undergo a rigorous 12(b)(6) analysis of the claims alleged to be futile based on less than complete briefing, especially in light of the deferential standard under which the court must consider 12(b)(6) motions. The court believes the better course is to liberally allow amendments that state a colorable claim and defer judgment as to whether they survive a motion to dismiss for failure to state a claim until such time when that motion is raised.").

**Conclusion**

Based on the foregoing, I will allow Plaintiff to file a Third Amended Complaint. Plaintiff is ordered to file a clean version of the Third Amended Complaint within three days from the date of this Order and promptly serve the new defendants in the case. Once Plaintiff's counsel learns who will be representing the new defendants, the Parties shall promptly contact the Court's chambers to schedule a telephonic status conference to address the schedule of the case going forward.

Dated: October 13, 2020
Denver, Colorado

N. Reid. Neureiter
United States Magistrate Judge